IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMD MEDICOM INC. and MEDICOM GROUP INC., <br><br> Plaintiff, <br><br> v. <br><br> ASTEK INNOVATIONS, LIMITED and YOUNG INNOVATIONS, INC. <br><br> Defendants. | Civil Action No.: 1:21-cv-06533 |

**COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

The Plaintiffs, AMD Medicom Inc. and Medicom Group Inc. (hereafter "Plaintiffs" or "Medicom") brings this complaint and declaratory judgment action against the Defendants Astek Innovations, Limited ("Astek") and Young Innovations, Inc. ("Young") (Astek and Young collectively referred to as "Defendants"), and for its cause of action alleges as follows:

**NATURE OF THE CASE**

1. Plaintiffs seek a declaratory judgment: (a) that Plaintiffs' Safe Matrix and Safe Jet products do not infringe U.S. Patent Nos. 8,517,732 (the "'732 Patent") and 9,173,725 (the "'725 Patent"); and (b) that the '732 and '725 Patents are invalid. Plaintiffs also bring this action for Tortious Interference with Business Relations and for False Advertising under the Lanham Act.

**PARTIES**

2. Plaintiff AMD Medicom Inc. is a Canadian corporation with its principal place of business located at 2555 Chemin de L'Aviation, Pointe-Claire, Quebec Canada H9P2Z2.

3. Plaintiff Medicom Group Inc. is a Canadian corporation with its principal place of business located at 2555 Chemin de L'Aviation, Pointe-Claire, Quebec Canada H9P2Z2.

4. On information and belief, Defendant Astek is a British corporation with its principal place of business located at Astek House, Atlantic Street, Altrincham, Cheshire, WA14 5DH.

5. On information and belief, Defendant Young is a Missouri corporation with its principal place of business at 2260 Wendt St., Algonquin, IL 60102.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338, and 2201, because this action involves claims presenting federal questions and arises under the patent laws and the Lanham Act, and seeks relief under the Federal Declaratory Judgment Act. This Court has supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367 since such state law claim arises out of the same case and controversy as the claims in this action, over which the Court exercises original jurisdiction.

7. On information and belief, Defendants are subject to personal jurisdiction in the Southern District of New York because Defendants have regularly conducted business in and directed at New York, and upon information and belief, Defendants directed their threats regarding Plaintiffs' products to individuals and entities in New York.

8. On information and belief, venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) because, among other reasons, Defendants are subject to personal jurisdiction in this judicial district, Defendants conduct or have regularly conducted business in this judicial

district, and/or because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL BACKGROUND

9. Founded in 1988, Plaintiffs are one of the world's leading manufacturers and distributors of high-quality infection control, single use and preventive products for the medical, dental, industrial, veterinary, laboratory and health and beauty markets.

10. In or around 2011, Astek and Medicom entered into an agreement whereby Medicom served in certain jurisdictions, including the United States and New York, as Astek's exclusive distributor of a dental device consisting of a disposable matrix band (referred to herein as the "Pro-Matrix").

11. In or around 2010 Astek and Medicom also entered into an agreement whereby Medicom would serve in certain jurisdictions, including the United States and New York, as Astek's exclusive distributor of a dental device consisting of an air and water spray nozzle (referred to herein as "Pro-Tip").

12. Astek and Medicom terminated their distribution agreement, effective July 31, 2021.

13. Astek purports to own the '732 Patent and '725 Patent. Copies of both patents are attached as *Exhibit A*.

14. On July 15, 2021, Defendants sent a letter to Plaintiffs' customers notifying those customers that the distribution agreement between Plaintiff and Astek has been terminated ("Defendants' July 15, 2021, Letter"). A copy of Defendants' July 15, 2021, Letter is attached as *Exhibit B*.

15. Defendants' July 15, 2021, Letter claimed that Defendants owned all patents and intellectual property rights related to the Pro-Matrix and Pro-Tip product lines.

16. Defendants' July 15, 2021, Letter stated that after July 31, 2021, Medicom will no longer have the right to supply these products.

17. Defendants' July 15, 2021, Letter threatened that Defendants not only will "aggressively" enforce the intellectual property rights it identified, but its threat also indicated that it will do so "actively" against anyone selling these products or anyone selling similar products. They assert this against products to which they broadly include what they characterized as "knock-off" products.

18. Despite Defendants' broad claims to Plaintiffs' customers that it would be the exclusive source of certain products, Defendants did not invent dental matrix devices. Neither did Defendants invent disposable dental air and water nozzles. These types of devices have existed for many years.

19. Defendants also have, in this letter, told Plaintiffs' customers that they will now be the exclusive supplier, foreclosing the possibility that Plaintiffs will continue to compete and be in the business of selling certain dental matrix and dental air and water nozzle devices to the customers who received the letter.

20. On information and belief, Defendants designed their communication to deceptively suggest that Plaintiffs agreed with these statements. Defendants not only advise they intended to be the exclusive provider but also tell customers they will be in touch the week of August 2 to review timing and order process, suggesting they are simply stepping into Plaintiffs' shoes, and masking the true facts that the situation is anything but – namely that Defendants are

launching a direct and competing attack on Plaintiffs' business and relationship with these customers.

21.    Upon information and belief, the July 15, 2021, Letter is designed to mislead and misrepresent, and will interfere with Plaintiffs' customer relationships, by falsely suggesting that Defendants are simply stepping into Plaintiffs' shoes as to the supply of dental matrix and nozzle devices, when in fact they are directly competing, and Plaintiffs remain strongly committed to supply these customers with suitable and effective products in this category.

22.    Defendants' threat to Plaintiffs and Plaintiffs' customers in the July 15, 2021, Letter was that Defendants will file a lawsuit against Plaintiffs or Plaintiffs' customers if they attempt to compete with Defendants by selling certain products in the dental matrix band and dental air and water nozzle category.

23.    Plaintiffs have developed their own disposable matrix band product, which is Plaintiffs' "Safe Matrix" product

24.    Plaintiffs have developed their own disposable dental air and water spray nozzle, which is Plaintiffs' "Safe Jet" product.

25.    Plaintiffs' Safe Matrix and Safe Jet products are unique and innovative products. Plaintiffs are the owners of pending applications for patent protection for these inventions.

26.    Plaintiffs' Safe Matrix and Safe Jet products do not infringe any intellectual property rights owned by Defendants, or by any other entity.

27.    Plaintiffs' Safe Matrix and Safe Jet products are, however, similar to Defendants' Pro-Matrix and Pro-Tip products insofar as they are both in the same general category of disposable dental products, namely, matrix bands and dental nozzles.

28. Plaintiffs seek this necessary relief because Defendants, the purported owners of the '732 and '725 Patents, have sent letters to Plaintiffs' customers threatening that Defendants intend to file suit to enforce its '732 and '725 Patents if Plaintiffs supply their customers with their competing products, which include Safe Matrix and Safe Jet.

29. The threat of suit by Defendants is real and not idle, as it has a direct impact upon Plaintiffs' relationships with its customers, including customers in this District, it impacts the fair competition between Plaintiffs and Defendants, including in this District, with regard to sales of these products, and it impacts on Plaintiffs' customers' ability to fairly compete with Defendants, including in this District.

30. The threat of suit is further false and deceptive as upon information and belief, Defendants' '732 and '725 Patents are invalid in light of the prior art and thus cannot be validly asserted against Plaintiffs' Safe Matrix and Safe Jet products.

31. Defendants' threats and allegations have thus placed a cloud over Plaintiffs, Plaintiffs' business and Plaintiffs' relationship with their customers, thereby creating a concrete and immediate justiciable controversy between Plaintiffs and Defendants.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment of Non-infringement of the '732 Patent)**

32. Plaintiffs reallege and incorporate the foregoing paragraphs as if fully set forth herein.

33. A concrete and immediate controversy has arisen between the parties regarding the question of infringement of the '732 patent by Plaintiffs' sales to its customers of the Safe Matrix product.

34.     Plaintiffs' Safe Matrix product does not have all of the elements of at least one of the claims of the '732 Patent, and therefore does not infringe any of the claims of the '732 Patent.

35.     The prior art shows that all of the core features purportedly taught by the '732 patent existed prior to the filing of the '732 Patent.

36.     For example, prior to the filing of the '732 Patent, other dental matrix products existed which taught deflector members that allow the user to angle the matrix band to secure a better fit around a patient's tooth.

37.     During prosecution of the '732 Patent, the inventors argued that their dental matrix band invention was novel because Defendants' device uses only a "Single Deflector Member."

38.     The Single Deflector Member is described in the '732 Patent as a component that is "slidably mounted on the pin (13)" and:

> the "member has at its inner side a part cylindrical surface (16) coaxial with the pin (13). At its outer side the member has diametrically opposite steps (17,18) and an elongate rib (19) extending readwardly longituginally of the body (1). This rib (19) projects an opening (20) in the adjacent side wall (21) of the forward part (5) of the body (1). This rib (19) projects through an opening (20) in the adjacent side wall (21) of the forward part (5) of the body (1). The forward step (17) of the member (15) engages the body structure (9) providing the rearward bounding edge (11) of the neck portion (7). The rearward step (18) and the rib (19) engage opposite sides of an adjacent edge region of the body side wall (21) at the opening (20). The member (15) is slidably mounted on the pin (13) so it can be moved between opposite ends thereof, as shown respectively in FIGS. 1 and 2.

39.     The Single Deflector Member is depicted in the patent and is further illustrated in Defendants' materials as shown below:



40. Among other things, Plaintiffs' Safe Matrix product does not have a Single Member Deflector, or any of its components, as disclosed in the '732 Patent, and therefore does not infringe the '732 Patent, as all of the claims of the '732 Patent require this limitation.

41. Plaintiffs seek and are entitled to a declaratory judgment that Plaintiffs' Safe Matrix product does not infringe any valid claim of the '732 Patent under 35 U.S.C. § 271 (or any subsection thereof).

### SECOND CLAIM FOR RELIEF
**(Declaratory Judgment of Non-Infringement of the '725 Patent)**

42. Plaintiffs reallege and incorporate the foregoing paragraphs as if fully set forth herein.

43. A concrete and immediate controversy has arisen between the parties regarding the question of infringement of the '725 patent by Plaintiffs' sales of the Safe Jet product.

44. Plaintiffs' Safe Jet product does not have all of the elements of at least one of the claims of the '725 Patent, and therefore does not infringe any of the claims of the '725 Patent.

45. The claims of the '725 Patent all require:

> A nozzle tip for a three-way syringe device, said nozzle tip comprising a <u>co-axial tube assembly</u> having an attachment end configured for releasable attachment of said nozzle tip to a syringe device, and wherein said tube assembly comprises an outer tube and an inner tube, said inner tube comprising an exposed end section with a water outlet and a hollow conduit extending along its length providing for water flow from the attachment to the water outlet, the inner and outer tubes providing an annular air flow area therebetween, the inner tube having an enlarged end section comprising <u>a single inclined outlet face</u>, and wherein air flow travels through the annular air flow area between the inner and outer tubes and is directed across the single inclined outlet face of the enlarged end section to exit the nozzle tip, wherein the <u>inner tube has a tight interference fit against an interior surface of the outer tube at the enlarged end section</u>, and the interference fit extends around the enlarged end section except for the single inclined outlet face, and the single inclined outlet face and the interior surface of the outer tube form therebetween an exit chamber for the air flow, which exit chamber increases in cross-sectional area going from an inlet end to an outlet end of the exit chamber.

46. Among other things, Plaintiffs' Safe Jet product does not have a "co-axial tube assembly" or "a single inclined outlet face" or an "inner tube [that] has a tight interference fit against an interior surface of the outer tube at the enlarged end section" as disclosed in the '725 Patent, and therefore does not infringe the '725 Patent, as all of the claims of the '725 Patent require these limitations.

47. Plaintiffs seek and are entitled to a declaratory judgment that Plaintiffs' Safe Jet product does not infringe any valid claim of the '725 Patent under 35 U.S.C. § 271 (or any subsection thereof).

## THIRD CLAIM FOR RELIEF
**(Declaratory Judgment of Patent Invalidity of the '732 Patent)**

48. Plaintiffs reallege and incorporate the foregoing paragraphs as if fully set forth herein.

49. A concrete and immediate controversy has arisen between the parties regarding the question of invalidity of the '732 Patent.

50. The '732 patent is invalid for failure to comply with the requirements of Title 35 of the United States Code, including, without limitation, one or more of §§ 101, 102, 103, and 112.

51. For example, the '732 Patent is anticipated or obvious in light of the following prior art references, among others: 2,367,439, 2006/0112792, 2,837,947, 2.522.190, 5,592,860, 5,626,475, 5,055,045, W002001005323A1, GB608107, 2,572,198 and 2,500,867.

## FOURTH CLAIM FOR RELIEF
**(Declaratory Judgment for Invalidity of the '725 Patent)**

52. Plaintiffs reallege and incorporate the foregoing paragraphs as if fully set forth herein.

53. A concrete and immediate controversy has arisen between the parties regarding the question of invalidity of the '725 Patent.

54. The '725 patent is invalid for failure to comply with the requirements of Title 35 of the United States Code, including, without limitation, one or more of §§ 101, 102, 103, and 112.

55. For example, the '725 Patent is anticipated or obvious in light of the following prior art references, among others: FR1285767 and US 4,783,008.

## FIFTH CLAIM FOR RELIEF
### (Tortious Interference with Business Relationship)

56. Plaintiffs reallege and incorporate the foregoing paragraphs as if fully set forth herein.

57. Plaintiffs have business relationships with their distributors and customers of disposable matrix band products and disposable dental nozzles.

58. Defendants are aware of those relationships, including because Defendants had supplied products to Plaintiffs that Plaintiffs then distributed to those customers.

59. With knowledge of Plaintiffs' relationships with their customers, Defendants interfered with those relationships, by among other things, threatening, without a valid basis to do so, Plaintiffs' customers that dental matrix and dental nozzles purchased from Plaintiffs unlawfully infringe Defendants' rights and threatening that Defendants will take legal action to enforce its intellectual property rights against those that seek to purchase these competing products from Plaintiffs, despite the fact that Plaintiffs' products do not infringe any intellectual property rights.

60. Defendants have acted with the sole purpose of harming Plaintiffs and/or with unfair and improper means to interfere with these relationships.

61. Plaintiffs have been harmed by Defendants' tortious interference.

## SIXTH CLAIM FOR RELIEF
### (False Advertising Under the Lanham Act)

62. Plaintiffs reallege and incorporate the foregoing paragraphs as if fully set forth herein.

63. This count arises under 15 U.S.C. §1125(a).

64. Defendants' July 15, 2021 Letter constitutes false advertising under the Lanham Act.

65. Defendants' July 15, 2021 letter is likely to mislead or confuse consumers in believing that the sale of any related or competing dental matrix product and any related disposable dental nozzle sold by Plaintiffs after July 31, 2021 would infringe Defendants' intellectual property rights.

66. Defendants' July 15. 2021 Letter clearly conveys, and on information and belief is designed to convey, the message that any competing product in this category that Medicom sells after July 31 2021, will constitute infringement.

67. Not only is the July 15, 2021 Letter addressing goods sold under the alleged patents, but also far more expansively, any 'knock off' products, which will be understood by purchasers as new or competing products which are designed to be used for similar purposes, and which are purportedly covered not only by any specific intellectual property rights but Defendants also assert undefined "related intellectual property rights."

68. Defendants' July 15, 2021 Letter was therefore either literally and/or impliedly false.

69. Defendants' July 15, 2021 Letter was used in interstate commerce because it was sent to Plaintiffs' customers.

70. Defendants' false statements, including its July 15, 2021 Letter caused Plaintiffs injury and damages.

**DEMAND FOR JURY TRIAL**

In accordance with Rule 38 of the Federal Rules of Civil Procedure and Local Rule CV-38, Plaintiffs respectfully demand a jury trial of all issues triable to a jury in this action.

**REQUEST FOR RELIEF**

WHERFORE, Plaintiffs respectfully request the Court to enter judgment in their favor and against Defendants as follows:

A. Enter Judgment in favor of Plaintiffs and against Defendants on all claims;

B. Declare that Plaintiffs and their customers do not and have not infringed, contributed to the infringement, or induced infringement of any claims of the '732 or '725 Patents, either literally or under the doctrine of equivalents by making, using, offering to sell, or selling the Safe Matrix or Safe Jet products;

C. Declare that all claims of the '732 and '725 Patents are invalid;

D. Enter an injunction, enjoining Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction, from threatening or initiating patent infringement litigation against Plaintiffs and Plaintiffs' customers, or any of their customers, dealers, agents, sellers, resellers, servants, or employees, or any prospective or present sellers, resellers, dealers, or users of the Safe Matrix or Safe Jet products, or charging any of them either verbally or in writing with infringement of the '732 or '725 patents or making any communications that include statements that the Safe Matrix or Safe Jet products infringe the '732 or '725 patents;

E. Declare this case exceptional under 35 U.S.C. § 285 and award Plaintiffs their reasonable attorneys' fees, expenses and costs incurred in the prosecution of this action;

  F. Award to Plaintiffs compensatory, consequential, statutory, and punitive damages on all claims of relief, including Plaintiffs' Tortious Interference claim and their False Advertising claim, in an amount to be determined at trial;

  G. For an award of their reasonable attorney's fees pursuant to 15 U.S.C. §1117(a) and for the costs of this action;

  H. Pre-judgment and post-judgment interest in an amount to be determined;

  I. A judgment that Defendants' acts of false advertising have been willful, knowing, and deliberate false statements, and awarding Plaintiffs enhanced damages pursuant to 15 U.S.C. § 1117(a); and

  J. All other relief that the Court may deem appropriate.

           Respectfully submitted
           for Plaintiffs,

      By:  s/Jeffrey A. Lindenbaum
         Jeffrey A. Lindenbaum (JL-1971)
         Jess M. Collen (JC-2875)
         COLLEN *IP*
         The Holyoke-Manhattan Building
         80 South Highland Avenue
         Ossining, New York 10562
         Tel.: (914) 941 5668
         Fax: (914) 941-6091
         jlindenbaum@collenip.com

Dated: August 2, 2021